Good morning, Your Honors. May it please the Court, Penny Fields for the appellant, Ricky Calhoun. I'd like to reserve two minutes for rebuttal, please. Sure. Keep track of your time. Your Honors, today Mr. Calhoun is asking for nothing more than the opportunity to have his day in court and litigate his damages claims against the state for violating his constitutional rights. There are three issues before the Court on appeal. First, whether under Heck v. Humphrey, Mr. Calhoun's 1983 claims did not accrue until his sentence was invalidated in November 2004, making his complaint timely. Second, whether a prosecutor who lies to the Court under oath in order to obtain improper jurisdiction for an SVP petition is entitled to prosecutorial immunity. And third, whether Mr. Calhoun's claims were sufficiently pleaded in his pro se amended complaint. I'd like to address the first two issues, and I'm happy to answer questions about the pleadings question, but I don't plan to address it at length as the state seems to have not contested that in the response. First, Mr. Calhoun's complaint is not barred by the statute of limitations. Heck controls this case, and Mr. Calhoun had no cause of action until his sentence was invalidated because success of these claims would necessarily imply the invalidity of his underlying sentence. Mr. Calhoun's complaint is not barred by the statute of limitations. Heck controls this case, and Mr. Calhoun had no cause of action until his sentence was invalidated because success of these claims would necessarily imply the invalidity of his underlying sentence. It's clear that a procedural challenge that would also imply the invalidity of the sentence or the conviction is similarly barred by Heck. Counsel, may I just ask you a question about Heck? Yes, Your Honor. And correct me if I'm wrong, but it would appear to me that Heck does not address and the parties do not discuss whether the Heck bar should apply to a suit that calls into question a resentencing or a sentence where concurrent sentences have been imposed. In those cases, success of the merits does not necessarily imply further release. And as King County argues, the modified sentence may be the same as the original sentence. But as far as I can determine, the Court has not yet indicated whether Heck should or should not apply to such cases. Well, Your Honor, we believe it should because if you look at the unusual perhaps in specific facts of this case, when the prosecutor filed the motion to modify the sentence, it was already clear that the original sentence was illegal, was invalid because it exceeded the statutory maximum. The modified sentence itself was also incorrect, and because of the way in which it was obtained without any opportunity to challenge it or actually have an adversarial process in which it could be corrected, that, as the Court later found, was also an invalid sentence. And I think one thing that's very key to this case and unique to this case that separates it out from other cases where the Court has considered this is the fact that this modified, reduced sentence became the jurisdictional predicate for an SVP petition. Without that valid sentence, the State could not have filed the SVP petition that has Mr. Calhoun still pending an SVP trial and still incarcerated to this day. So I believe that success on these claims, showing the illegality, the illegal detention by the State, both beyond his statutory maximum, beyond a legal sentence, which the Court later determined should have, had been served by sometime in 2000 or 2001, that success on these claims would definitely imply the invalidity of certainly the modified sentence that's still pending. And that's why it served as the jurisdictional predicate for the SVP petition. You know, if you're right, but if the prosecutor is immune, then you're still out of court. So could you talk about the immunity? Yes, Your Honor. The claim is also not barred by absolute immunity in this case because, excuse me, immunity is according to a prosecutor for conduct intimately associated with the judicial process for the prosecutor's role as an advocate for the State. The Supreme Court's decision in Kalanity Fletcher, this Court's decision in Cruz, makes it clear that when the prosecutor steps out of the advocate's role into the witness role, they are not entitled to absolute immunity. The reason for that is immunity serves to protect the prosecutor in the exercise of their professional judgment. But his affidavit here, he wasn't talking about the facts of the case, the underlying crime. He was talking about what he did, who he contacted in the course of his prosecutorial role. That's correct, Your Honor. And I think the State has tried to make that distinction as well. But I find no distinction in case law between the type of facts that the prosecutor is testifying to or attesting to the truth of. And the reason for that is, I think Kalina makes clear, when you attest to the truth of facts by signing an affidavit, there is no exercise of professional judgment there. That is either it's true or it's not. Either it happened or it didn't. Would it make a difference if he hadn't signed an affidavit? Is that the key in your mind if he had gone to the court and the court says, well, we can't go forward because the defendant's not here? And he says, well, I checked with the defendant's counsel and the counsel says no objection to going forward. Would that have made a difference? Would he have immunity for those representations? Well, no, Your Honor, because in that case, he'd still be lying to the court. Well, we know that he was – we don't know, but let's assume he's lying. I mean, that's the purpose of immunity. You've done something wrong. So if you're only immune when you haven't missed it, it's not going to be very helpful. No, Your Honor. It's not the fact that – it's not the fact that he lied. Although, again, Mr. Cowling was dismissed from the pleadings, and so we must take the facts as properly alleged in the complaint as true, which alleged that he did, in fact, lie. But that would be an issue for the jury in a trial. What it is is it's the conduct at issue, whether it's attesting to facts or exercising prosecutorial judgment to decide what to charge or what witnesses to punt on, et cetera. So it's not the fact that he did something improper necessarily that removes immunity. It's the specific kind of conduct, that sort of functional conduct. And because he's attesting to facts – well, let's imagine if he attested to facts and they were true, then, I mean, that would be – he would be immune from liability. Not immune in an absolute sense, but as it would be vindicated at trial. But because we're taking the facts as alleged in the complaint, the facts as alleged show that he did, in fact, lie in his affidavit to the court. How would you distinguish this case from Scott v. Hearn? Scott v. Hearn, the Tenth Circuit case on which the State relies, is distinguishable because the prosecutor there was accorded absolute immunity because the prosecutor drafted the witness affidavit and filed the witness affidavit, but did not sign the affidavit. A lay witness or an expert witness – I can't recall, I'm sorry – signed the affidavit. And Scott even distinguished that case from Kalina, saying, what's different about it is in Kalina the prosecutor actually signed the affidavit, said, I swear under the penalty of perjury that these facts are true. That did not happen in Scott. In Scott, the prosecutor merely drafted, chose which facts to put into the affidavit exercising professional judgment. But there was no witness-like act in Scott. Thank you. You mentioned you wanted to save two minutes. Yes, Your Honor, thank you. Thank you, Ms. Fields. Good morning. Good morning. May it please the Court, my name is Jessica Harding and I'm here representing the King County Defendant's appellees in this matter. The district court was correct when it dismissed Mr. Calhoun's civil rights complaint for three reasons. First, he filed his lawsuit over one year after the statute of limitations expired. Second, the prosecutor in this case is entitled to absolute immunity because he was acting as an advocate when he proceeded with the sentence modification to reduce Mr. Calhoun's criminal sentences. Finally, his original complaint alleged negligence on the part of the prosecutor, which is insufficient to state a constitutional claim. Regarding the statute of limitations issue, Mr. Calhoun was required to file his complaint no later than three years after his cause of action accrued. Here, he absolutely knew of the allegations against the prosecutor in this case in August of 2003 when his lawyers filed a motion to vacate and dismiss the sexually violent predator petition that had been filed against him. I had trouble getting my mind around why a judgment in favor of Calhoun wouldn't necessarily have implied the invalidity of the sentence. I mean, the sentence was done in the absence of his presence, his absence. And he's saying you can't do that, so that sentence in 2002 is unlawful. That seems to be the classic Hick-Bard sort of sentence. I don't think that's the case, Your Honor. I think that what we have to focus on is the actions that Mr. Calhoun is complaining about in this lawsuit, and that is that his due process rights were violated when this prosecutor went forward with the hearing. Well, that's his claim about why his rights were violated, but assuming a court agreed with that, wouldn't the court have to say, and so therefore that 2002 sentence can't stand? Well, I think it would be that the hearing was unlawful, not that his confinement or his sentence, whether or not the sentence was invalidated, the remedy there is a re-sentence, which is actually what happened in this case. Right, but it's saying the sentence that you were sentenced in 2002 can't stand because you weren't there, your due process rights were violated, assuming he won, so that sentence is invalid. That just seems to be unless there's an intel that's confirmed, he can't bring that action. I respectfully disagree, Your Honor. I think that the conduct that he's complaining about he knew of in August of 2003, and I don't believe under heck that he was required to wait. I think that he, as similar to the Wilkinson case, the plaintiffs in that case were challenging parole procedures, and the court in that case found that success in the action would not necessarily have spelled their immediate or speedier release, and I think that's the case here. Isn't that the distinction? Because in Wilkinson it was these standalone set of procedures. They said those procedures cannot stand. Even if the procedures had been struck down, the court said, that wouldn't affect his sentence, whereas here he's saying my due process rights were violated, and if the court agreed then they would have to vacate that sentence. The sentence was not correctly imposed. But it also would not have caused his release from confinement because, as is clear in the record, there's no secret that the state was planning to proceed with commitment proceedings against him, and that's what they did when the resentencing occurred prior to his maximum statutory release date. So your thought is that it has to be both in order to be heck barred, it would not only necessarily imply the invalidity of a sentence, but also that the defendant would have to be released. That success in the action, exactly. Ms. Fields makes the point that, is the guy's name Dernbach? Yes. Dernbach didn't just merely make a prosecutorial decision. He filed a document under oath where he purports to testify about events or conversations he had with somebody else. Why then does he not, why has he not been excluded from the immunity analysis? He's not excluded because he was, no complaining witness could have taken the actions that Mr. Dernbach took here. He admittedly did make factual representations in the declaration that he submitted, but Judge Okuda's question to Ms. Fields was right on point, which is if Prosecutor Dernbach had not submitted a declaration and had simply gone into court and represented to the court that he had given notice to the other side, in a sentence modification hearing, that's a, he never stepped outside of his role as an advocate. And simply the fact of him filing a declaration along with the motion does not take him outside of that role. Can he lie with impunity, with, how far can prosecutors go in lying to the court? Well, understandably in this case, the facts have to be construed in the light most favorable to Mr. Calhoun, but we are certainly not willing to concede that the prosecutor in this case did lie. At most, he, I think what may have happened is he misconstrued his conversation with the public defender, but Mr. Calhoun's complaint says that he was told, that Prosecutor Dernbach was told this office, that the public defender's office never represented Mr. Calhoun. So in this case, how far can a prosecutor go? I think certainly Prosecutor Dernbach is entitled to absolute immunity if he, as Judge Acuda pointed out, immunity is for missteps, and at the very most, that's what happened here. A complaining witness could not have gone into court and reduced Mr. Calhoun's sentences. That function is uniquely prosecutorial, and Prosecutor Dernbach is entitled to absolute immunity as a result. Looking at the function that was performed in the case and sentencing, the modification of a sentence, the reduction of a sentence, is intimately associated with the judicial phase of the criminal process, and that's why we believe that he's entitled to absolute immunity in this case. And on the final point, regarding Mr. Calhoun's original complaint, the court also found that his complaint did not allege a claim under Section 1983 because it alleged negligence on the part of Mr. Dernbach, of Prosecutor Dernbach, as opposed to an actual constitutional violation. And contrary to what Ms. Fields has argued this morning, we did not concede that the complaint was properly, should not have been dismissed on those grounds, that the district court should have considered the amended complaint. However, if this court finds that the district court should have considered it, it would be harmless error because the first two bars, the statute of limitations, as well as absolute prosecutorial immunity, would nonetheless bar the amended complaint. If you have no further questions. Thank you, Ms. Harvey. Thank you. Ms. Fields, back to you. You've got about two minutes. Thank you. Your Honors, first I'd like to address the pleadings issued briefly. The amended complaint in this case was the operative complaint, and the court erred in not addressing it. It was filed after the magistrate judge issued his reporting recommendations, but fully six weeks before the district court entered its order dismissing the complaint. Mr. Calhoun had the right to amend his complaint under the rules. That was the first time he had amended his complaint. And it was in response to this court's decision, the magistrate judge's conclusion that he was alleging negligence, and it was an attempt to clarify and correct that. Again, as a pro se defendant, his pleadings are to be construed liberally. Therefore, I believe that he does state a claim that is not based on negligence in his amended complaint, and the district court's conclusion on that should be reversed. I would like to touch again on the immunity issue. Again, it matters not what Mr. Dernbach would argue at trial or try to prove about what his understanding was or whether he lied or not. Before this court, the standard of review for dismissal on the pleadings is de novo, taking the allegations in the complaint as true. The complaint clearly alleges that Mr. Dernbach did lie. He lied intentionally to obtain an illegal sentence. That served as a jurisdictional predicate for the SBP petition. And basically the state's position does seem to me to be that the state can lie with impunity, particularly if they believe that. They're not saying that. What they're saying is prosecutors get these kind of allegations made against them all the time. People who are being prosecuted say things about prosecutors that may or may not be true, and that's why the law gives the prosecutors immunity so they don't have to spend all their day defending against allegations, whether they're true, false, or otherwise. They get immunity. They get immunity if they're not attesting to the truth of facts, which is what happened in Kalina and Cruz. They didn't get immunity. Mr. Dernbach shouldn't get immunity here. I find no distinction in case law for what kind of facts are being attested to. The law is that they cannot step out of the role of the advocate and become a witness to the truth or falsity of facts to the court. Thank you very much, Ms. Fields. Again, thank you as well. The case just started. You just submitted it. Ms. Fields, we know that you accepted this case on a pro bono basis, and we thank you and your firm for doing that. Thank you. The last cases then are consolidated for argument 0835484 and 35685, Swanview Coalition v. Bar Willettos. Each side will have a total of 15 minutes.
judges: Nelson D. W., Silverman, Ikuta, Canby, Leavy